No. 16-2185

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

CARLTON & HARRIS CHIROPRACTIC, INC., *et al.*

*Appellant*

v.

PDR NETWORK, LLC, PDR DISTRIBUTION, LLC,
PDR EQUITY, LLC, *et al.*

*Appellees*

---

Appeal from the United States District Court
for the Southern District of West Virginia (at Huntington)
District Court No. 3:15-cv-14887
The Honorable Robert C. Chambers, Chief Judge Presiding

---

## BRIEF OF APPELLANT

---

Brian J. Wanca                    D. Christopher Hedges
Glenn L. Hara                     David H. Carriger
ANDERSON + WANCA                  THE CALWELL PRACTICE PLLC
3701 Algonquin Rd., Suite 500     500 Randolph Street
Rolling Meadows, IL  60008        Charleston, WV  25302
Telephone:  (847) 368-1500        Telephone:  (304) 400-6558

*ATTORNEYS FOR APPELLANT*

*ORAL ARGUMENT REQUESTED*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __16-2185__    Caption: __Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Carlton & Harris Chiropractic, Inc.__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _____s/Glenn L. Hara_____     Date: _____10/26/16_____

Counsel for: ____Appellant_____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____10/26/16_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Jeffrey N. Rosenthal                          Ana Tagvoryan
Blank Rome LLP                               Blank Rome, LLP
One Logan Square                             2029 Century Park East
130 N. 18th Street                           6th Floor
Philadelphia, PA  19103                      Los Angeles, CA 90067

____s/Glenn L.  Hara_____     _____10/26/16_____
         (signature)                                  (date)

# TABLE OF CONTENTS

**Page(s)**

CORPORATE DISCLOSURE STATEMENT

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES ..........................................................ii

JURISDICTIONAL STATEMENT..................................................1

STATEMENT OF ISSUES ...........................................................1

STATEMENT OF THE CASE.......................................................2

SUMMARY OF ARGUMENT .....................................................6

ARGUMENT ..............................................................................7

    I.     Standard of review....................................................7

    II.    The district court erred in holding that the FCC's
           interpretation of the TCPA is not binding in a federal
           district court under the Hobbs Act.............................8

    III.   The district court erred in holding that faxes promoting
           "free goods or services," such as faxes promoting
           free publications, are advertisements only if they *also*
           attempt to sell some other good or service .............17

    IV.   At best, the FCC's free-publication rule is ambiguous, and
           so the district court erred in interpreting it in favor of fax
           advertisers, rather than the persons the TCPA was designed
           to protect .................................................................23

CONCLUSION ...........................................................................32

REQUEST FOR ORAL ARGUMENT ......................................32

CERTIFICATE OF COMPLIANCE WITH RULE

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Addison Automatics, Inc. v. RTC Group, Inc.*,
2013 WL 3771423 (N.D. Ill. July 16, 2103) ....................................26

*Amerigard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst.*,
2006 WL 1766812 (W.D. Mo. June 23, 2006)................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................7

*Harbourt v. PPE Casino Resorts Maryland, LLC*,
820 F.3d 655, 658 (4th Cir. 2016) .................................7, 8

*Blitz v. Napolitano*,
700 F.3d 733 (4th Cir. 2012) ..............................................9

*Cartrette v. Time Warner Cable, Inc.*,
2016 WL 183483 (E.D.N.C. Jan. 14, 2016) ....................................10

*C.E. Design, Ltd. v. Prism Bus. Media, Inc.*,
606 F.3d 443 (7th Cir. 2010) ..............................6, 10, 14, 15

*Chapman v. First Index, Inc.*,
796 F.3d 783 (7th Cir. 2015). .............................................20

*Chevron U.S.A., Inc. v. NRDC*,
467 U.S. 837 (1984)...................................5, 10, 11, 12, 16

*Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*,
106 F. Supp. 3d 9, 15 (D.D.C. 2015) ................................31

*FCC v. ITT World Commc'ns, Inc.*,
466 U.S. 463 (1984)...........................................................8

# TABLE OF AUTHORITIES (cont'd.)

**Page(s)**

*Fennell v. TLB Kent Co.*,
  865 F.2d 498 (2d Cir. 1989) ................................................................ 15

*Friedman v. Heckler*,
  765 F.2d 383 (2d Cir. 1985) ........................................................... 21, 22

*Gager v. Dell Fin. Servs., LLC*,
  727 F.3d 265 (3d Cir. 2013) ................................................................ 24

*Gottlieb v. Carnival Corp.*,
  635 F. Supp. 2d 213 (E.D.N.Y. 2009) ................................................ 10

*GTE S., Inc. v. Morrison*,
  199 F.3d 733 (4th Cir. 1999) ............................................................ 6, 9

*Harbourt v. PPE Casino Resorts Maryland, LLC*,
  820 F.3d 655 (4th Cir. 2016) ................................................................ 7

*Harry C. Crooker & Sons, Inc. v. OSHRC*,
  537 F.3d 79 (1st Cir. 2008) ................................................................ 29

*In re Naranjo*,
  768 F.3d 332 (4th Cir. 2014) .............................................................. 15

*Keasler v. United States*,
  766 F.2d 1227 (8th Cir. 1985) ............................................................ 15

*Leyse v. Clear Channel Broad. Inc.*,
  697 F.3d 360 (6th Cir. 2012) .............................................................. 10

*Leyse v. Clear Channel Broad., Inc.*,
  545 F. App'x 444 (6th Cir. 2013) ............................................... 6, 10, 14

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  944 F. Supp. 2d 1226 (S.D. Fla. 2013) .............................................. 11

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014) .................................................. 6, 10, 12

## TABLE OF AUTHORITIES (cont'd.)

**Page(s)**

*Mey v. Monitronics Int'l, Inc.*,
959 F. Supp. 2d 927 (N.D.W.Va. 2013) ........................................... 26

*Mims v. Arrow Fin. Servs., LLC*,
132 S. Ct. 740 (2012) ....................................................................... 26

*Mourning v. Family Publ'n Serv., Inc.*,
411 U.S. 356 (1973) ......................................................................... 23

*N. Suburban Chiropractors Clinic v. Merck & Co.*,
2013 WL 5170754 (N.D. Ill. Sept. 13, 2013) .................................. 28

*N.B. Indus. v. Wells Fargo & Co.*,
2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) ................................. 27

*Nack v. Walburg*,
715 F.3d 680 (8th Cir. 2013) ....................................... 6, 10, 12, 13, 15

*Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.*,
737 F.3d 273 (4th Cir. 2013) ........................................................... 15

*Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc.*,
526 F. Supp. 2d 851 (N.D. Ill. 2007) ............................................... 27

*Physicians Healthsource, Inc. v. Alma Lasers, Inc.*,
2012 WL 4120506 (N.D. Ill. Sept. 18, 2012) .................................. 26

*Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*,
2015 WL 144728 (D. Conn. Jan. 12, 2015) ...................................... 27

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
2013 WL 486207 (D.N.J. Feb. 6, 2013) ........................................... 28

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
2013 WL 2460345 (D.N.J. June 6, 2013) ......................................... 29

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
2015 WL 3827579 (D. N.J. June 19, 2015) ...................................... 29

## <u>TABLE OF AUTHORITIES</u> (cont'd.)

<u>Page(s)</u>

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
    2015 WL 5164821 (D.N.J. Sept. 2, 2015) .........................................30

*Physicians Healthsource, Inc. v. Stryker Sales*,
    2014 WL 7109630 (W.D. Mich. Dec. 12, 2014).......................26, 29

*Pornomo v. United States*,
    814 F.3d 681 (4th Cir. 2016) ...............................................................9

*Roy v. Cty. of Lexington, S.C.*,
    141 F.3d 533 (4th Cir. 1998) .............................................................24

*Russell v. Absolute Collection Servs., Inc.*,
    763 F.3d 385 (4th Cir. 2014). ...................................................5, 7, 23

*Sacco v. Bank of Am., N.A.*,
    2012 WL 6566681 (W.D.N.C. Dec. 17, 2012)..................................10

*Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*,
    788 F.3d 218 (6th Cir. 2015) .............................................................29

*SCF Arizona v. Wachovia Bank, N.A.*,
    2010 WL 5422505 (S.D.N.Y. Dec. 14, 2010) ...........................25, 26

*Spreckels v. Helvering*,
    315 U.S. 626 (1942)...........................................................................28

*St. Louis Heart Ctr., Inc. v. Forest Pharms., Inc.*,
    2013 WL 1076540 (E.D. Mo. Mar. 13, 2013)..................................26

*United States v. O'Hagan*,
    521 U.S. 642 (1997)...........................................................................21

*Warren v. N. Carolina Dep't of Human Res., Div. of Soc. Servs.*,
    65 F.3d 385 (4th Cir. 1995) ...............................................................29

*Weinberger v. Salfi*,
    422 U.S. 749 (1975) ..........................................................................21

# TABLE OF AUTHORITIES (cont'd.)

**Page(s)**

**Statutes**

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 2342(1) ...................................................................1, 4, 6, 8

28 U.S.C. § 2344. .................................................................................9

47 U.S.C. § 227(a)(5). .......................................................................4, 17

47 U.S.C. § 227(b)(3)...........................................................................1, 3

**Rules & Regulations**

47 C.F.R. § 64.1200(a)(4)(ii)–(iv). ....................................................3, 20

47 C.F.R. § 64.1200(f)(1)........................................................................17

47 C.F.R. § 64.1200(f)(6).........................................................................20

*In re Rules & Regulations Implementing the Tel. Consumer Protection*
*Act of 1991; Junk Fax Prevention Act of 2005*, Report & Order &
Third Order on Reconsideration, 21 FCC Rcd. 3787
(Apr. 6, 2006).......................................................................................4

*In re Rules & Regulations Implementing the Telephone Consumer*
*Protection Act of 1991; Junk Fax Prevention Act of 2005*,
Order, 29 FCC Rcd. 13998 (Oct. 30, 2014)......................................13

**Jurisdictional Statement**

The United States District Court for the Southern District of West Virginia had subject-matter jurisdiction of this action under 28 U.S.C. § 1331. The Supreme Court held in *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012), that federal and state courts share concurrent jurisdiction over claims arising under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(3).

This Court has jurisdiction because Plaintiff is appealing from the district court's order dismissing the case for failure to state a claim, which is a "final decision" under 28 U.S.C. § 1291.

**Statement of Issues**

1.       Whether this Court will join the Sixth, Seventh, Eighth, and Eleventh Circuits in holding that an order issued by the Federal Communications Commission interpreting the TCPA is binding in federal district courts and its validity may be challenged only by following the procedures in the Administrative Orders Review Act (the "Hobbs Act"), 28 U.S.C. § 2342(1).

2.       Whether the district court erred by refusing to enforce the FCC's 2006 Order interpreting the TCPA's definition of "advertisement" to rule that facsimiles promoting "free goods and services," such as faxes promoting "free publications" or "free seminars," are advertisements.

**Statement of the Case**

On November 10, 2015, Plaintiff, a chiropractic clinic in West Virginia, filed its Class Action Complaint against Defendants under the TCPA. (A9). The Complaint alleges that on or about December 17, 2013, Plaintiff received an unsolicited fax advertising Defendants' "products, goods, and services," attaching the fax as Exhibit A. (A11, ¶¶ 11–12).

The fax is addressed to "Practice Manager" from "PDR Network" and offers a "FREE 2014 *Physicians Desk Reference* eBook." (A23). The fax states that the free PDR eBook contains the "[s]ame trusted, FDA-approved full prescribing information . . . [n]ow in a new, convenient digital format." (*Id.*) The fax states "[f]or additional information, please contact PDR Network at (866) 925-5155 or customerservice@pdr.net." (*Id.*) Fine print at the bottom of the fax states: "To opt-out of delivery of clinically relevant information about healthcare products and services from PDR via fax, call 866-469-8327. You are receiving this fax because you are a member of the PDR Network." (*Id.*)

The Complaint alleges that Exhibit A is an "unsolicited advertisement" as defined by the TCPA and FCC's rules implementing the TCPA. (A19, ¶ 29). The Complaint alleges Plaintiff did not give "prior express invitation or permission" to Defendants to send the fax (*id.*) and Plaintiff did not have an "established business relationship" ("EBR") with Defendants (*id.* ¶ 33).

2

The Complaint alleges that, even if Defendants had obtained Plaintiff's prior express permission or had an EBR with Plaintiff, the fax lacks the opt-out notice required by the FCC regulations to assert those defenses. (*Id.* ¶ 29). For example, the opt-out notice on the fax (1) is not "clear and conspicuous," (2) does not provide a fax number for opt-out requests, (3) does not state that a sender's failure to honor a request within 30 days is unlawful, and (4) does not state what the recipient must do in order to make a legally enforceable opt-out request, all of which are required on all fax advertisements under the FCC regulations, 47 C.F.R. § 64.1200(a)(4)(ii)–(iv). (A23).

The Complaint alleges that Defendants sent "the same and other unsolicited facsimiles without the required opt out language to Plaintiff and more than 25 other recipients" (A12, ¶ 14), and seeks to certify a class of persons similarly situated (*id.* ¶¶ 17–24). The Complaint seeks the relief authorized by the TCPA, 47 U.S.C. § 227(b)(3), consisting of statutory damages of $500 to $1,500 per violation and injunctive relief. (*Id.* ¶¶ 13, 19(l), & 31).

On February 5, 2016, Defendants moved to dismiss the Complaint for failure to state a claim, arguing that Exhibit A is not an "advertisement" as a matter of law under the TCPA because it "does not offer anything for purchase or sale," instead merely offering a "free" copy of the 2014 eBook. (A37, Defs.' Mem. Supp. Mot. Dismiss at 7).

On March 4, 2016, Plaintiff filed its opposition to the motion to dismiss, explaining that the FCC issued a final order in 2006 interpreting the definition of "advertisement" in 47 U.S.C. § 227(a)(5), and ruling that "facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition." (A60–61 (discussing *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, Report & Order & Third Order on Reconsideration, 21 FCC Rcd. 3787, 3814, ¶ 52 (Apr. 6, 2006) (hereinafter "2006 Order")).

Plaintiff explained that the 2006 Order goes on to specifically identify faxes promoting "free publications" as advertisements. (*Id.*) Plaintiff explained that the FCC's rationale for this rule was that faxes promoting free publications are "often" or "in many instances" a "pretext" or part of an "overall marketing campaign," and so the FCC's rule "presume[s] that such messages describe the 'quality of any property, goods, or services," bringing them within the statutory definition. (*Id.*)

Plaintiff cited authority from the Supreme Court, this Court, and four other circuit courts holding that a final order of the FCC is binding in federal district courts under the Hobbs Act, 28 U.S.C. § 2342(1), and so the district court had no jurisdiction to do anything but enforce the free-goods-or-services rule. (A58–59). Plaintiff argued that even if the district court found the ruling ambiguous, it must

4

interpret it broadly in favor of consumers because a "remedial statute" like the

TCPA is "to be construed liberally" under *Russell v. Absolute Collection Servs.,*

*Inc.*, 763 F.3d 385, 393 (4th Cir. 2014). (A67).

On September 29, 2016, the district court heard oral argument on the motion

to dismiss. (A101, Hr'g Tr., Sept. 29, 2016). On September 30, 2016, the district

court issued its order granting the motion to dismiss. (A127).

First, the district court held that, because the statutory definition of

"advertisement" is "clear," the "FCC's interpretation of the TCPA is not due

'substantial deference'" under *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843

(1984). (A133). The district court held that it was not violating the Hobbs Act by

holding the free-goods-or-services rule is not subject to *Chevron* deference because

"[t]he Hobbs Act does not require a federal court to adopt an FCC interpretation of

the TCPA," and "[t]he Court is not obliged to defer to the FCC's interpretation of

an unambiguous statute." (*Id.*)

Second, the district court held that, "even if the Court were to defer to the

FCC's interpretation," the free-goods-or-services rule states that a fax must

"promote" free goods or services to be an advertisement, and since *promote* has

"an explicit commercial nature," the rule therefore means that a fax promoting free

goods or services is an advertisement only if it *also* aims "through those goods and

services" to sell something else that is not free. (*Id.*) The district court reasoned

5

that, because the rule unambiguously requires that faxes promoting free goods or services must *also* aim to sell something else, it "need not reach" the issue of whether the TCPA is a remedial statute or whether any ambiguity must be interpreted in Plaintiff's favor. (A135).

On October 12, 2016, Plaintiff timely filed its notice of appeal to this Court. (A138).

## Summary of Argument

First, the district court erred in holding that "[t]he Hobbs Act does not require a federal court to adopt an FCC interpretation of the TCPA," and that "[t]he Court is not obliged to defer to the FCC's interpretation of an unambiguous statute." To the contrary, this Court enforced the Hobbs Act to bar a challenge to an FCC order in a non-TCPA case in *GTE S., Inc. v. Morrison*, 199 F.3d 733, 742 (4th Cir. 1999), and four other circuit courts of appeal have specifically held the FCC's interpretations are binding in private TCPA actions under the Hobbs Act, 28 U.S.C. § 2342(1). *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014); *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir. 2013); *Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 459 (6th Cir. 2013); *C.E. Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 445–50 (7th Cir. 2010).

Second, the district court erred in holding that, even if it applied the FCC's 2006 Order, the plain language of the free-goods-or-services rule means that faxes

that "promote goods or services even at no cost" are advertisements only if they *also* promote some other good or service "for sale," meaning not "at no cost." That is the opposite of what the rule says, and the district court's holding is erroneous.

Third, at best, the district court identified an ambiguity in the 2006 Order regarding whether a fax that promotes free goods or services is an advertisement *per se* or merely creates a "presumption" that it is an advertisement. But even if the rule is ambiguous (which Plaintiff disputes), the district court should be reversed because it applied the narrowest possible interpretation that most heavily favors fax advertisers, while the TCPA is a "remedial statute," and this Court holds that a remedial statute is "construed liberally" in favor of those it is designed to protect. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014).

## Argument

### I.    Standard of review.

This Court reviews a dismissal for failure to state a claim de novo. *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 658 (4th Cir. 2016). Dismissal is appropriate only if the defendant demonstrates that the plaintiff does not even have a "plausible" claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be no "reasonable expectation that discovery will reveal evidence" to support the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). It is not enough that the court suspects the plaintiff will ultimately "fail to

7

find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563 n.8. The plaintiff "need not 'forecast' evidence sufficient to prove" a claim. *Harbourt*, 820 F.3d at 658.

## II. The district court erred in holding that the FCC's interpretation of the TCPA is not binding in a federal district court under the Hobbs Act.

The district court held that "[t]he Hobbs Act does not require a federal court to adopt an FCC interpretation of the TCPA," and that "[t]he Court is not obliged to defer to the FCC's interpretation of an unambiguous statute." (A133). This holding is erroneous and must be reversed, regardless how this Court rules on any other aspect of this appeal. Affirming the district court would encourage regulated parties in a wide range of contexts (not only the TCPA context) to attack federal agency rules in district courts in this Circuit in contravention of the Hobbs Act, and it would create a clear split with the Sixth, Seventh, Eighth, and Eleventh Circuits, which have specifically held in private TCPA enforcement actions that the FCC's interpretations of the TCPA are binding.

The Administrative Orders Review Act (the "Hobbs Act"), 28 U.S.C. § 2342, provides that "exclusive jurisdiction" to "determine the validity of" a final order of the FCC (and numerous other federal agencies) lies in the federal court of appeals on a petition for review from agency action. *See, e.g.*, *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984) (holding district court lacked jurisdiction to enjoin FCC action as ultra vires because "[e]xclusive jurisdiction for

8

review of final FCC orders . . . lies in the Court of Appeals" through Hobbs Act

procedures). The petition for review must be filed by an "aggrieved" party and

"shall be against the United States," giving the agency an opportunity to respond.

28 U.S.C. § 2344. Thus, contrary to the district court's holding in this case, a

district court has no discretion to "adopt" or "defer to" the FCC's interpretation of

the TCPA. (A133). A district court can either enforce the FCC's interpretation or it

can violate the Hobbs Act.

Although this Court has not applied the Hobbs Act specifically in the TCPA

context, it held in *GTE S., Inc. v. Morrison*, 199 F.3d 733, 742 (4th Cir. 1999), that

the district court lacked jurisdiction to review a final FCC order issuing pricing

rules pursuant to the Communications Act, holding the Hobbs Act governs "all

final orders (including those relating to rulemaking) of the FCC." Plaintiff cited

*GTE S.* in the district court (A58), and the district court ignored it (A127–36).

In *Pornomo v. United States*, 814 F.3d 681, 690 (4th Cir. 2016), this Court

held the district court lacked jurisdiction under the Hobbs Act to decide a dispute

over the validity of an order of the Secretary of Transportation that arose in an

action under the Federal Tort Claims Act. In *Blitz v. Napolitano*, 700 F.3d 733, 737

(4th Cir. 2012), the Court held the district court lacked jurisdiction under a similar

"jurisdiction-channeling" statute to hear a constitutional challenge to TSA security-

screening rules, holding that Congress has the power to determine the jurisdiction of the "inferior Courts." *Id.*

A district court in this Circuit recently applied an FCC interpretation of the TCPA allowing consumers to revoke "prior express consent" to telephone calls "using any reasonable method," rejecting the defendant's argument that the FCC's ruling contradicted the statute and holding, "[r]egardless of whether this FCC interpretation of the TCPA is entitled to *Chevron* deference, this Court lacks jurisdiction to review its validity." *Cartrette v. Time Warner Cable, Inc.*, 2016 WL 183483, at *3 (E.D.N.C. Jan. 14, 2016) (quoting *Sacco v. Bank of Am., N.A.*, 2012 WL 6566681, at *9 (W.D.N.C. Dec. 17, 2012)). Plaintiff discussed *Cartrette* in the district court (A59), and the district court ignored it (A127–36).

Four other circuit courts of appeal have applied the Hobbs Act specifically with respect to the FCC's interpretations of the TCPA, sometimes to the benefit of plaintiffs and sometimes to the benefit of defendants. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014); *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir. 2013); *Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 459 (6th Cir. 2013);[1] *C.E. Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 445–50 (7th Cir. 2010); *see also Gottlieb v. Carnival Corp.*, 635 F.

---

[1] The 2013 *Leyse* decision superseded the Sixth Circuit's prior ruling that the Hobbs Act did not bar the challenge to the regulation. *Leyse v. Clear Channel Broad. Inc.*, 697 F.3d 360, 376 (6th Cir. 2012).

Supp. 2d 213, 218–21 (E.D.N.Y. 2009) (holding in TCPA fax case that court lacked "jurisdiction to invalidate the EBR exemption and must apply it as if it were part and parcel of the TCPA"). Plaintiff discussed these cases in opposition to the motion to dismiss (A59–60), and the district court ignored them. (A127–36). These four circuit court decisions merit close examination.

In *Mais*, the district court awarded summary judgment to the plaintiff in a TCPA case involving phone calls, refusing to apply an FCC order stating that the mere "provision of a cell phone number" constitutes "prior express consent," reasoning that the rule was "inconsistent with the statute's plain language because it impermissibly amends the TCPA to provide an exception for 'prior express *or implied* consent.'" *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1239 (S.D. Fla. 2013). The district court held "Congress could have written the statute that way, but it didn't," and so "the FCC's contrary construction is not entitled to deference" under *Chevron. Id.* Like the district court in this case, the *Mais* district court insisted it was not violating the Hobbs Act by declining to enforce the FCC's interpretation because "this action's central aim is not to invalidate any [FCC] order," but "[r]ather, the purpose of this lawsuit is to obtain damages for violations of the TCPA, a consumer protection statute." *Id.* at 1237.

The Eleventh Circuit reversed, holding that "[b]y refusing to enforce the FCC's interpretation, the district court exceeded its power" in violation of the

11

Hobbs Act. *Mais*, 768 F.3d at 1119. The Eleventh Circuit held it made "no difference" that the validity of the FCC's interpretation arose "in a dispute between private parties," rather than in a proceeding with the primary purpose of attacking the ruling. *Id.* It held the plaintiff was "free to ask the Commission to reconsider its interpretation of 'prior express consent' and to challenge the FCC's response in the court of appeals," but the district court was bound to enforce the ruling, even if it considered it unworthy of *Chevron* deference. *Id.* at 1119–20.

In *Nack*, the plaintiff sued the defendant for violating an FCC rule, which was issued in the same 2006 Order announcing the free-goods-or-services rule, requiring "opt-out notice" on fax advertisements sent with "prior express invitation or permission." The district court entered summary judgment for the defendant, "interpreting" the FCC rule as not applying to faxes sent with permission, reasoning that "as a whole," the TCPA applies "only to unsolicited faxes," i.e., faxes sent without "prior express invitation or permission." *Nack v. Walburg*, 2011 WL 310249, at *4–5 (E.D. Mo. Jan. 28, 2011). Like the district court in this case, the district court insisted it was not "enjoining, setting aside, annulling, or suspending" the FCC rule in violation of the Hobbs Act, but merely "interpreting" the rule in a manner "consistent with the TCPA, and with Congress' and the FCC's stated intent to prevent 'unsolicited' facsimile advertisements." *Id.* at *5–6.

On appeal, the Eighth Circuit invited the FCC's views, and the FCC filed an amicus brief arguing that the defendant's challenge was barred by the Hobbs Act and that, to obtain judicial review of the rule, the defendant must petition the FCC and then (if the petition was denied) seek review in the court of appeals. *Nack*, 715 F.3d at 686 n.2. The Eighth Circuit agreed with the FCC and reversed, holding that neither the district court nor the Eighth Circuit (in the current posture) had jurisdiction to "interpret" the regulation away as contrary to the statute and that the defendant must first "challenge the validity" of the regulation before the FCC to obtain judicial review. *Id.*

After the Eighth Circuit's ruling, the defendant in *Nack* petitioned the FCC, which after notice and comment, issued an order October 30, 2014, granting in part and denying in part. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, Order, 29 FCC Rcd. 13998 (Oct. 30, 2014). Multiple parties (both TCPA defendants and plaintiffs, some of whom are represented by undersigned counsel, Anderson + Wanca) filed petitions for review from that order in various circuit courts of appeal under the Hobbs Act, which the Judicial Panel on Multidistrict Litigation subsequently assigned to the D.C. Circuit, and which are currently pending in consolidated appeal No. 14-1234.

13

In *Leyse*, the district court dismissed a TCPA plaintiff's claim arising out of a telephone call from a local radio station, holding that the FCC issued an order in 2003 exempting such calls from the TCPA's definition of "advertisement," and that the plaintiff's challenge to the validity of that exemption was barred by the Hobbs Act. 545 F. App'x at 459. The Sixth Circuit affirmed, holding that "the Hobbs Act deprives the district court below—and this court on appeal—of jurisdiction over the argument that the exemption was invalid or should be set aside," holding, "the Hobbs Act's jurisdictional limitations are equally applicable" regardless of whether a party challenges the agency order directly or "indirectly" in a private TCPA action. *Id.* (quoting *C.E. Design*, 606 F.3d at 448).

In *C.E. Design*, the district court granted summary judgment for the defendant in a TCPA action involving fax advertisements, enforcing the FCC's interpretation that fax advertisements sent pursuant to an "established business relationship" or "EBR" were not prohibited and that the plaintiff's argument that the FCC had no authority to create the EBR rule was barred by the Hobbs Act. 606 F.3d at 446. The Seventh Circuit affirmed, holding it made "no difference" that the challenge to the EBR rule arose in a private TCPA action instead of an action with the express purpose of attacking the rule, and that when the plaintiff "argued that the district court should ignore—or in other words, *invalidate*—the FCC's EBR

14

exemption for purposes of this suit, the Hobbs Act's jurisdictional bar came into play." *Id.* at 448 (emphasis added).

Thus, the district court's holding in this case directly contradicts four circuit courts of appeal applying the Hobbs Act in TCPA cases. This Court will "often consider whether our decisions fall in line with those of our sister circuits," which it considers "co-equal." *In re Naranjo*, 768 F.3d 332, 349 (4th Cir. 2014); *see also Fennell v. TLB Kent Co.*, 865 F.2d 498, 501 (2d Cir. 1989) (court is "inclined to follow [its] sister circuits" in the absence of "weighty countervailing considerations"); *Keasler v. United States*, 766 F.2d 1227, 1233 (8th Cir. 1985) (circuit court opinions should be accorded "great weight and precedential value" to "maintain uniformity in the law among our circuits"). This Court should follow the Sixth, Seventh, Eighth, and Eleventh Circuits and hold that the FCC's interpretations of the TCPA are binding. The Court should reverse the district court's holding that "[t]he Hobbs Act does not require a federal court to adopt an FCC interpretation of the TCPA." (A133). As every circuit court to address this question has held, that is exactly what the Hobbs Act requires.

Even if this Court is "ambivalent" about *Mais*, *Nack*, *Leyse*, and *C.E. Design*, there are "costs" associated with "holding differently and creating a circuit split," which could "create confusion and inequity" depending on where a suit is pending. *Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.*, 737 F.3d

273, 280 (4th Cir. 2013). Here, an opinion from this Court affirming the district court's ruling that federal courts are not bound by the FCC's interpretations of the TCPA would virtually guarantee confusing and inequitable situations where TCPA litigants are subject to different rules in different jurisdictions.

TCPA violations nearly always cross state boundaries, involving nationwide (or at least multi-state) telemarketing and fax-advertising campaigns. If this Court were to affirm the district court in this case, it is not difficult to imagine a situation where a district court in South Carolina (Fourth Circuit) strikes down an FCC interpretation as unworthy of *Chevron* deference, while a district court in the neighboring state of Georgia (Eleventh Circuit) enforces the FCC's interpretation under *Mais*. That would create an untenable situation, almost certainly leading to forum-shopping and inconsistent rulings, precisely what the Hobbs Act is designed to avoid. *CE Design*, 606 F.3d at 450 (Hobbs Act allows "uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress" to interpret the TCPA).

In sum, the district court erred in holding that "[t]he Hobbs Act does not require a federal court to adopt an FCC interpretation of the TCPA," and that "[t]he Court is not obliged to defer to the FCC's interpretation of an unambiguous statute." (A133). Affirming this ruling would encourage regulated entities in a range of contexts to challenge agency rulings in district courts in this Circuit in

16

violation of the Hobbs Act, and it would create a circuit split with the Sixth,

Seventh, Eighth, and Eleventh Circuits. It should be reversed.

**III.    The district court erred in holding that faxes promoting "free goods or services," such as faxes promoting free publications, are advertisements only if they *also* attempt to sell some other good or service.**

The district court held that, "even if the Court were to defer to the FCC's

interpretation," a "plain reading" of the 2006 Order demonstrates that a fax

promoting free goods or services, such as a free publication, is an advertisement

only if it is an "attempt to increase sales" of some other good or service that is *not*

free. (A134). The 2006 Order states precisely the opposite.

The 2006 Order unambiguously states that "facsimile messages that promote

goods or services even at no cost, such as free magazine subscriptions, catalogs, or

free consultations or seminars, are unsolicited advertisements under the TCPA's

definition."[2] (2006 Order ¶ 52). The Order goes on to specifically focus on faxes

promoting "free publications," explaining its reasoning as follows:

> In many instances, "free" seminars serve as a pretext to advertise
> commercial products and services. Similarly, "free" publications are
> often part of an overall marketing campaign to sell property, goods, or
> services. For instance, while the publication itself may be offered at
> no cost to the facsimile recipient, the products promoted within the

---

[2] The statute defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The FCC regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).

> publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services." Therefore, facsimile communications regarding such free goods and services, if not purely "transactional," would require the sender to obtain the recipient's permission beforehand, in the absence of an EBR.

(*Id.*) Thus, under the plain language of the 2006 Order, a fax offering a "free publication" is presumed to describe the "quality of any property, goods, or services" and is an "advertisement" under the TCPA's definition. (*Id.*)

In this case, the district court acknowledged that the PDR fax "certainly offers a good to Plaintiff," namely the 2014 e-Book. (A132). The court also recognized that this "good" was offered "at no cost." (*Id.*) Because the fax promotes a "good" "at no cost," it is an advertisement under the free-goods-or-services rule.

That should have been the end of the analysis, but the district court imported a "selling" requirement into the rule—a rule aimed at faxes promoting goods or services "at no cost"—through the word *promote*, quoting the ruling as follows: "facsimile messages that *promote* goods or services, even at no cost, . . . are unsolicited advertisements under the TCPA's definition." (A133–34 (ellipsis in original)). The district court reasoned that the word *promote* has "an explicit commercial nature," and so in the district court's estimation, the FCC's ruling means that "faxes that offer free goods or services must aim, through those goods

18

and services, to garner a buyer's acceptance or attempt to increase sales" of some *other* goods or services that are *not* free. (A134).

The district court reached this erroneous conclusion because it omitted the words "such as" from the FCC ruling, which states in full that faxes "that promote goods or services even at no cost, *such as* free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition." (2006 Order ¶ 52 (emphasis added)). The "such as" makes unmistakably clear that the thing being "promoted" in the fax is the "free good or service"—such as a free publication, seminar, consultation, etc.—not some other good or service that is not free. If *promote* necessarily means "offer for sale," as the district court held, then the FCC's rule would mean that a fax is an advertisement only if it promotes "goods or services even at no cost [for sale]," and the idea of promoting something for sale "at no cost" is inherently contradictory.

The district court's ruling appears to have been motivated at least in part by its assumption that applying the plain language of the free-goods-or-services rule would create "a blanket ban on any fax that offers a free good or service" and mean that "any fax that offers a free good or service is barred by the statute . . . ." (A135). That is not the case at all.

As Plaintiff explained in its opposition to the motion to dismiss (A61), and at the hearing on the motion (A120), the mere status of a fax as an "advertisement"

19

does not necessarily mean that it violates the TCPA. It simply means that the sender must abide by the FCC's rules governing fax advertisements, which require (1) an opt-out notice informing the recipient how to stop future faxes and (2) either "prior express invitation or permission" from the recipient or an EBR between sender and recipient. 47 C.F.R. § 64.1200(a)(4)(ii)–(iv). EBR is a low hurdle, and is created through nearly any "voluntary two-way communication" under 47 C.F.R. § 64.1200(f)(6). These are "simple rules" that any advertiser should easily be able to follow. *Chapman v. First Index, Inc.*, 796 F.3d 783, 784 (7th Cir. 2015). With a minimal investment in TCPA compliance, a sophisticated entity like PDR Network should have no problem lawfully promoting the free eBook by fax.

The district court held that "the evil to be combatted" in the free-goods-or-services rule is not present in this particular case because the rule is aimed at faxes that "are a pretext for a commercial transaction that will inevitably follow from the fax." (A135). It is true that the FCC's *motivation* for the rule was that faxes promoting free goods or services are "often" or "in many instances" a pretext or part of an "overall marketing campaign," but the rule does not require a plaintiff to prove that a fax promoting free goods or services is in fact a "pretext" or part of an overall marketing campaign.

Rather, the rule states that *because* "such messages"—i.e., faxes promoting free goods or services—are "in many instances" or "often" a pretext or part of an

overall marketing campaign, the FCC "presume[s]" that they are advertisements. (2006 Order ¶ 52). If the FCC required a pretext to establish that the fax is an advertisement, it would have had no reason to *presume* anything. The FCC's presumption makes sense only in the context of explaining a *per se* rule covering all faxes that promote free goods or services because the FCC determined such messages are often abused.

Although the free-goods-or-services rule is not subject to review in this proceeding, it was reasonable for the FCC to impose a bright-line rule, given its finding that faxes promoting free goods and services are "often" and "in many instances" abused. Administrative agencies can, and often do, enact prophylactic rules that are stricter than the underlying statute in order to accomplish the statute's purposes. *See, e.g.*, *Mourning v. Family Publ'n Serv., Inc.*, 411 U.S. 356, 369 (1973) (upholding regulation as prophylactic measure, enacted under Truth in Lending Act, requiring lenders to make disclosures not mandated by the act itself); *United States v. O'Hagan*, 521 U.S. 642 (1997) (upholding SEC regulation prohibiting activity not explicitly prohibited by underlying statute); *Weinberger v. Salfi*, 422 U.S. 749, 774 (1975) (discussing *Mourning*).

In *Friedman v. Heckler*, 765 F.2d 383, 387 (2d Cir. 1985), for example, the plaintiffs argued that the "threat of provider overreaching" that motivated the Department of Health and Human Services to issue rules defining "related entities"

for purposes of Medicare reimbursements was not present in their case because they "operate[d] at arm's length." The Second Circuit rejected that argument, holding that entities that qualify as "related" under the regulation are "reasonably presumed" to be "dealing at less than arm's-length" and that "[p]rophylactic rules . . . cannot, and need not, operate with mathematical precision." *Id.* at 388. The Second Circuit held that although prophylactic rules "may occasionally lead to unfair results," the "mere fact that a regulation operates overbroadly does not render it invalid" and "neither the possibility of unfairness in a particular case nor the availability of alternatives to the adopted regulation renders the Secretary's choice invalid." *Id.*

The FCC's free-seminar rule is no different from the "related entities" rule in *Friedman*. The FCC is the expert agency on these matters and has been interpreting and enforcing the TCPA for 25 years. In its role, it made a finding that faxes promoting "free publications" are often a pretext or part of an overall marketing campaign, and so it reasonably imposed a broad prophylactic rule that such faxes are "presume[d]" to be advertisements. While that rule "may occasionally lead to unfair results," as in *Freidman*, that does not render the rule invalid.  If Defendants find the simple rules governing fax advertisements (such as including a compliant opt-out notice) too burdensome, they should not be using fax

machines to promote their e-Books, and should stick to less highly regulated means of communication, such as direct mail, email, or internet.

In sum, this Court should reverse the district court's holding that the free-goods-or-services rule in the 2006 Order means a fax promoting a "free publication" is an advertisement only if it *also* tries to sell something else that is not free. That is the opposite of what the ruling says, and the district court's ruling to the contrary was erroneous.

## IV. At best, the FCC's free-publication rule is ambiguous, and so the district court erred in interpreting it in favor of fax advertisers, rather than the persons the TCPA was designed to protect.

Plaintiff argued before the district court that, *at best*, Defendants raised an ambiguity over whether the free-goods-or-services rule is a *per se* rule. (A67–68). Plaintiff maintains that the rule unambiguously states that free-publication faxes are advertisements, but even if the rule is ambiguous, the district court must be reversed because this Court recognizes "the canon of statutory interpretation that remedial statutes are to be construed liberally." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014).

In *Russell*, the Court applied the remedial-statute canon in favor of the plaintiff in an action under the Fair Debt Collection Practices Act, interpreting the statute broadly in favor of the plaintiff because the statute "facilitates private enforcement by allowing aggrieved consumers to bring suit" and because the

statutory damages provision showed that "Congress plainly intended to regulate unscrupulous conduct by encouraging consumers who were the target of unlawful collection efforts to bring civil actions." *Id.*; *see also Roy v. Cty. Of Lexington, S.C.*, 141 F.3d 533, 540 (4th Cir. 1998) (holding "[e]xemptions from or exceptions to" the Fair Labor Standards Act "are to be *narrowly construed*" against defendants).

This Court has not considered whether the TCPA is a "remedial statute," but the Supreme Court held in *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012), that the TCPA was passed to protect consumers from "unrestricted telemarking," including fax advertising. The Third Circuit squarely held in *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013), that the TCPA "is a remedial statute that was passed to protect consumers" and broadly construed it to allow consumers to revoke prior express consent to telephone calls, where the statute and regulations were silent. The FCC agrees. *See In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7993 ¶ 56 (rel. July 10, 2015) (agreeing with *Gager* that "in light of the TCPA's purpose, any silence in the statute as to the right of revocation should be construed in favor of consumers").

A district court in this Circuit held in *Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927, 930 (N.D.W.Va. 2013), that "[t]he TCPA is a remedial statute and

24

thus entitled to a broad construction" in a TCPA action involving voice telephone calls. The court broadly construed the statutory term "on behalf of" in light of the FCC's 2013 ruling that "'on behalf of' liability does not require a formal agency relationship" between a "seller" and telemarketer in a TCPA phone-call case, and denied the defendant's motion for summary judgment. *Id.* at 932.

Thus, in this case, the Court should construe the term "advertisement" and the FCC's interpretation of that term broadly in favor of fax recipients and against fax senders, like Defendants. The broadest, most pro-plaintiff interpretation of the FCC ruling (assuming it is ambiguous) is that faxes promoting free publications are advertisements *per se*. Plaintiff argues that is what the plain language says, but no one could argue this is not a *reasonable* reading of the ruling that "facsimile messages that promote goods or services even at no cost," such as faxes promoting "free publications," are advertisements. (2006 Order ¶ 52). The broad interpretation requires reversal in this case for the reasons above.

The second-broadest interpretation (again assuming the rule is ambiguous) is that a fax promoting a free publication is "presume[d]" to be a "pretext" or part of an "overall marketing campaign" unless and until the defendant comes forward with evidence to rebut that presumption. That interpretation would require reversal here because this case was decided on a motion to dismiss for failure to state a claim, and a defendant cannot rebut a presumption on the pleadings. *See, e.g.*, *SCF*

25

*Arizona v. Wachovia Bank, N.A.*, 2010 WL 5422505, at *9 (S.D.N.Y. Dec. 14, 2010) ("Although Wachovia may rebut the presumption against a release of tort liability with evidence later, this Court cannot conclude that the release is effective on a motion to dismiss."). Rather, Defendants would be required to produce evidence to rebut the presumption, and Plaintiff would be entitled to discovery to test that evidence.

In its opposition to the motion to dismiss, Plaintiff cited numerous free-seminar cases denying motions to dismiss based on the free-goods-or-services rule. (A64–65 (citing *Physicians Healthsource, Inc. v. Alma Lasers, Inc*., 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012) (denying motion to dismiss, holding "faxes promoting a free seminar may constitute an 'unsolicited advertisement' since free seminars are often a pretext to market products or services"); *Addison Automatics, Inc. v. RTC Group, Inc*., 2013 WL 3771423, at *2 (N.D. Ill. July 16, 2103) (denying motion to dismiss because "free seminars are often a pretext to market products or services"); *St. Louis Heart Ctr., Inc. v. Forest Pharms., Inc.*, 2013 WL 1076540, at *4 (E.D. Mo. Mar. 13, 2013) (denying motion to dismiss on free-seminar fax); *N. Suburban Chiropractors Clinic v. Merck & Co*., 2013 WL 5170754, at *3 (N.D. Ill. Sept. 13, 2013) (same)). Plaintiff also cited *Physicians Healthsource, Inc. v. Stryker Sales*, 2014 WL 7109630, at *8 (W.D. Mich. Dec. 12, 2014), where the district court denied summary judgment on a free-seminar fax in

26

light of the FCC's reasoning that such faxes "are usually part of an overall marketing campaign, a fact not necessarily evident from the four corners of the fax." The district court ignored all of Plaintiff's cases. (A127–36).

Instead, the district court relied on five easily distinguishable decisions. (A131). In *N.B. Indus. v. Wells Fargo & Co*., 2010 WL 4939970, at *11 (N.D. Cal. Nov. 30, 2010), the fax did not offer any free goods or services, and was merely an application for an award. The case does not implicate the free-goods-or-services rule and is irrelevant. *Id.*

In *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 2015 WL 144728, at *3 (D. Conn. Jan. 12, 2015), the district court held that the 2006 Order "could be read to categorize all faxes promoting free seminars as unsolicited advertisements," but decided to instead "require plaintiffs to show that the fax has a commercial pretext," interpreting the ruling in favor of the fax sender, like the district court in this case. That decision is on appeal to the Second Circuit, Appeal No. 15-288, is fully briefed, and was argued September 29, 2015. Plaintiff maintains that the district court's decision is erroneous and will likely be reversed.

Both *Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc*., 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007), and *Amerigard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst*., 2006 WL 1766812, at *1–*2 (W.D. Mo. June 23,

2006), involved faxes regarding research studies, not offers for free goods and

services, such as a free publication or free seminar.

In *Physicians Healthsource, Inc. v. Janssen Pharm., Inc*., 2013 WL 486207,

at *4-5 (D.N.J. Feb. 6, 2013) ("*Janssen I*"), the district court dismissed on the basis

that a fax stating a drug had been reclassified for insurance purposes was a "bona

fide informational communication" under the 2006 Order. The fax did not offer

"free goods and services," did not implicate the free-goods-or-services rule, and is

therefore inapposite.

Although the district court in this case did not address the requirements for

the "bona fide informational communication" in the 2006 Order,[3] the PDR fax is

specifically covered by the free-goods-or-services rule. The federal courts will not

disregard a *specific* agency ruling on point in favor of *general* statements in other

sections of the agency's rules. *See, e.g.*, *Spreckels v. Helvering*, 315 U.S. 626, 628

(1942) (holding "a general regulation designating 'commissions' as one of a long

list of deductible business expenses is not controlling in the face of a specific

---

[3] The FCC ruled that in determining whether a fax is a "bona fide informational communication," it "will consider whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, *i.e.*, to paid subscribers or to recipients who have initiated membership in the organization that sends the communication." (2006 Order ¶ 53 & n.187). The district court did not address these requirements, and there is no factual record from which it could do so.

regulation pertaining to commissions on securities transactions"). "[I]t is an elementary principle of statutory construction that a specific statutory provision controls a more general one," *Warren v. N. Carolina Dep't of Human Res., Div. of Soc. Servs.*, 65 F.3d 385, 390 (4th Cir. 1995), and this "conventional canon of legal interpretation" applies to agency regulations as well as statutes, *Harry C. Crooker & Sons, Inc. v. OSHRC*, 537 F.3d 79, 84 (1st Cir. 2008) (refusing to construe "general regulations to override a separate, highly specific regulation," holding it "would turn the regulatory scheme on its head").

In addition, as Plaintiff pointed out, but the district court disregarded, the *Janssen* court subsequently granted leave to amend the complaint to allege the "informational" veneer of the fax was a "pretext." *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2013 WL 2460345, at *4 (D.N.J. June 6, 2013) ("*Janssen II*"). Following discovery, the district court denied the defendant's motion for summary judgment, holding evidence regarding the timing of the faxes and their genesis in the defendant's marketing department raised a genuine issue into "whether there is an advertising intent" behind the faxes. *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2015 WL 3827579, at *1, *4 (D. N.J. June 19, 2015) ("*Janssen III*") (citing *Stryker*, 2014 WL 7109630, at *8). The court later denied the defendant's motion to reconsider, which argued that *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218 (6th Cir. 2015), stands for the

29

proposition that a court should not look past the "four corners" of a fax in

determining whether it is an "advertisement," given that *Medco* was decided on

summary judgment. *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2015

WL 5164821, at *4–5 (D.N.J. Sept. 2, 2015) ("*Janssen IV*").

In this case, although Plaintiff maintained it need not do so under the 2006

Order, Plaintiff sought leave in the alternative to amend the Complaint to allege

that the fax promoting the free PDR e-Book is part of an "overall marketing

campaign." No one can deny that, "while the publication itself may be offered at

no cost," the "products promoted within" the PDR are "commercially available."

(2006 Order ¶ 52). PDR Network is not a non-profit, and it admits that it is

"indirectly funded by pharmaceutical companies to help satisfy various 'duty to

warn' laws." (A32). Plaintiff is entitled to explore the details of how that "funding"

arrangement works, and it cannot know those details without discovery.

In addition, Plaintiff submitted evidence to the district court showing that the

first page of the *2015* e-Book is a full-page advertisement for the "PDR Pharmacy

Discount Card," stating that "Patients save up to 75% on brand and generic drugs,"

that the plan "[i]ncludes over 50,000 drugs at 60,000 pharmacies nationwide," and

that "[k]its available in English or Spanish." (A76–77, Declaration of Ryan M.

Kelly ¶¶ 3–7).[4] The advertisement states that "[n]o enrollment or periodic fees apply," but "[t]he pharmacy may pay the plan a fee from amounts the pharmacy collects from the member." (*Id.* ¶ 7).

Plaintiff sought leave in the alternative to amend the Complaint to allege that the 2014 e-Book is part of an overall marketing campaign for the PDR Pharmacy Discount Card, which indisputably has to do with the buying and selling of pharmaceutical drugs (A66), but the district court disregarded this request and dismissed the Complaint without leave to amend. At the very least, that ruling was erroneous and should be reversed. *See Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 15 (D.D.C. 2015) (denying motion to dismiss where fax offering free inclusion in directory was not an "advertisement" on its face, but "[i]t remains for discovery to determine whether the Fax was in fact 'part of an overall campaign'").

In sum, the free-goods-or-services rule unambiguously states that the fax in this case is an "advertisement," but even if this Court finds the rule ambiguous, it should still reverse because the district court interpreted the rule in the narrowest possible manner in favor of fax advertisers, instead of construing any ambiguity in

---

[4] Plaintiff was unable to find a copy of the *2014* e-Book, and since Plaintiff's case was dismissed without being permitted to conduct any discovery, Plaintiff would have to allege on information and belief that the 2014 e-Book also contains an advertisement for the PDR Pharmacy Discount Card.

favor of the fax recipients the TCPA is designed to protect. At the very least, the district court should have allowed Plaintiff to amend to allege that the PDR fax is part of an "overall marketing campaign" to sell (1) the pharmaceuticals listed in the PDR e-Book or (2) the PDR Pharmacy Discount Card.

## Conclusion

For the foregoing reasons, this Court should reverse the district court's dismissal for failure to state a claim, join the Sixth, Seventh, Eighth, and Eleventh Circuits in holding that a district court is bound by the FCC's interpretations of the TCPA under the Hobbs Act, hold that the FCC's 2006 order unambiguously states that a fax promoting a "free publication" is an advertisement, and hold that the fax attached as Exhibit A to the Complaint promoting a free 2014 PDR e-Book is an advertisement as a matter of law.

## Request for Oral Argument

Plaintiff respectfully requests that the Court hear oral argument in this matter. In particular, oral argument may be helpful to answer any questions the Court has regarding the Hobbs Act's jurisdictional limitations with respect to final FCC orders and the procedures for judicial review prescribed by the Act.


Date:  December 19, 2016            Respectfully submitted,

                                    CARLTON & HARRIS
                                    CHIROPRACTIC, INC.

/s/Glenn L. Hara
Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  (847) 368-1500
Facsimile:  (847) 368-1501

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### Briefing Orders issued before 12/01/2016

**No. _____     Caption:** _____

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ ]     this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]     this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ ]     this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

[ ]     this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s)_____

Attorney for_____

Dated:_____

04/13/2012
SCC

## CERTIFICATE OF SERVICE

I certify that on December 19, 20`16, the foregoing **Brief of Appellant Carlton & Harris Chiropractic, Inc.**, was served on all parties or their counsel of record through the CM/ECF System.

Participants in this case are all registered CM/ECF users.

/s/  Glenn L. Hara
Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  (847) 368-1500
Facsimile:   (847) 368-1501